# UNITED STATES *v.* BROCKAMP, ADMINISTRATOR OF THE ESTATE OF McGILL, DECEASED

No. 95-1225.   Argued December 3, 1996—Decided February 18, 1997*

---

*Together with *United States* v. *Scott,* also on certiorari to the same court (see this Court's Rule 12.4).

*Deputy Solicitor General Wallace* argued the cause for the United States. With him on the briefs were *Acting Solicitor General Dellinger, Assistant Attorney General Argrett, Kent L. Jones, Gilbert S. Rothenberg,* and *Bridget M. Rowan.*

*Robert F. Klueger* argued the cause and filed a brief for respondents.

JUSTICE BREYER delivered the opinion of the Court.

The two cases before us raise a single question. Can courts toll, for nonstatutory equitable reasons, the statutory time (and related amount) limitations for filing tax refund claims set forth in § 6511 of the Internal Revenue Code of 1986? We hold that they cannot.

These two cases present similar circumstances. In each case a taxpayer initially paid the Internal Revenue Service (IRS) several thousand dollars that he did not owe. In each case the taxpayer (or his representative) filed an administrative claim for refund several years after the relevant statutory time period for doing so had ended. In each case the taxpayer suffered a disability (senility or alcoholism), which, he said, explained why the delay was not his fault. And in each case he asked the court to extend the relevant statutory time period for an "equitable" reason, namely, the existence of a mental disability—a reason not mentioned in § 6511, but which, we assume, would permit a court to toll the statutory limitations period *if, but only if,* § 6511 contains an implied

"equitable tolling" exception. See 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056 (2d ed. 1987 and Supp. 1996); see also *Wolin* v. *Smith Barney, Inc.*, 83 F. 3d 847, 852 (CA7 1996) (defining equitable tolling).

In both cases, the Ninth Circuit read § 6511 as if it did contain an implied exception that would permit "equitable tolling." It then applied principles of equity to each case. It found those principles justified tolling the statutory time period. And it permitted the actions to proceed. 67 F. 3d 260 (1995); judgt. order reported at 70 F. 3d 120 (1995). All other Circuits that have considered the matter, however, have taken the opposite view. They have held that § 6511 does not authorize equitable tolling. See *Amoco Production Co.* v. *Newton Sheep Co.*, 85 F. 3d 1464 (CA10 1996); *Lovett* v. *United States*, 81 F. 3d 143 (CA Fed. 1996); *Webb* v. *United States*, 66 F. 3d 691 (CA4 1995); *Oropallo* v. *United States*, 994 F. 2d 25 (CA1 1993) *(per curiam);* and *Vintilla* v. *United States*, 931 F. 2d 1444 (CA11 1991). We granted certiorari to resolve this conflict. And we conclude that the latter Circuits are correct.

The taxpayers rest their claim for equitable tolling upon *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89 (1990), a case in which this Court considered the timeliness of an employee's lawsuit charging his Government employer with discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* The Court found the lawsuit untimely, but nevertheless tolled the limitations period. It held that the "rule of equitable tolling" applies "to suits against the Government, in the same way that it is applicable" to Title VII suits against private employers. 498 U. S., at 94–95. The Court went on to say that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.*, at 95–96.

The taxpayers, pointing to *Irwin*, argue that principles of equitable tolling would have applied had they sued private

defendants, *e. g.,* had they sought restitution from private defendants for "Money Had and Received." See C. Keigwin, Cases in Common Law Pleading 220 (2d ed. 1934). They add that given *Irwin*'s language, there must be a "presumption" that limitations periods in tax refund suits against the Government can be equitably tolled. And, they say, that "presumption," while "rebuttable," has not been rebutted. They conclude that, given *Irwin*, the Ninth Circuit correctly tolled the statutory period for "equitable" reasons.

In evaluating this argument, we are willing to assume, favorably to the taxpayers but only for argument's sake, that a tax refund suit and a private suit for restitution are sufficiently similar to warrant asking *Irwin*'s negatively phrased question: Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply? But see *Flora* v. *United States,* 362 U. S. 145, 153–154 (1960) (citing *Curtis's Administratrix* v. *Fiedler,* 2 Black 461, 479 (1863)) (distinguishing common-law suit against the tax collector from action of assumpsit for money had and received); *George Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 382–383 (1933); see also Plumb, Tax Refund Suits Against Collectors of Internal Revenue, 60 Harv. L. Rev. 685, 687 (1947) (describing collector suit as a fiction solely designed to bring the Government into court). We can travel no further, however, along *Irwin*'s road, for there are strong reasons for answering *Irwin*'s question in the Government's favor.

Section 6511 sets forth its time limitations in unusually emphatic form. Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied "equitable tolling" exception. See, *e. g.,* 42 U. S. C. § 2000e–16(c) (requiring suit for employment discrimination to be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action . . . "). But § 6511 uses language that is not simple. It sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover,

§ 6511 reiterates its limitations several times in several different ways. Section 6511 says, first, that a

> "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." 26 U. S. C. § 6511(a).

It then says that

> "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed . . . unless a claim for . . . refund is filed . . . within such period." § 6511(b)(1).

It reiterates the point by imposing substantive limitations:

> ·"If the claim was filed by the taxpayer during the 3-year period . . . the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. . . ." § 6511(b)(2)(A).

And

> "[i]f the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B).

The Tax Code reemphasizes the point when it says that refunds that do not comply with these limitations "shall be considered erroneous," § 6514, and specifies procedures for the Government's recovery of any such "erroneous" refund payment. §§ 6532(b), 7405. In addition, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include "equitable tolling." See § 6511(d) (establishing special time limit rules for refunds re-

lated to operating losses, credit carrybacks, foreign taxes, self-employment taxes, worthless securities, and bad debts); see also *United States* v. *Dalm,* 494 U. S. 596, 610 (1990) (discussing mitigation provisions set forth in 26 U. S. C. §§ 1311–1314); § 507 of the Revenue Act of 1942, 56 Stat. 961 (temporarily tolling limitations period during wartime).

To read an "equitable tolling" provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc. Moreover, such an interpretation would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which we have found no direct precedent. Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. There are no counterindications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

The nature of the underlying subject matter—tax collection—underscores the linguistic point. The IRS processes more than 200 million tax returns each year. It issues more than 90 million refunds. See Dept. of Treasury, Internal Revenue Service, 1995 Data Book 8–9. To read an "equitable tolling" exception into § 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for "equitable tolling" which, upon close inspection, might turn out to lack sufficient equitable justification. See H. R. Conf. Rep. No. 356, 69th Cong., 1st Sess., 41 (1926) (deleting provision excusing tax deficiencies in the estates of insane or deceased individuals because of difficulties involved in defining incompetence). The nature and potential magnitude of the administrative problem suggest that Congress

decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system. At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.

The taxpayers' counterrebuttal consists primarily of an interesting historical analysis of the Internal Revenue Code's tax refund provisions. They try to show that § 6511's specific, detailed language reflects congressional concern about matters not related to equitable tolling. They explain some language, for example, in terms of a congressional effort to stop taxpayers from keeping the refund period open indefinitely through the device of making a series of small tax payments. See S. Rep. No. 398, 68th Cong., 1st Sess., 33 (1924). They explain other language as an effort to make the refund time period and the tax assessment period coextensive. See H. R. Rep. No. 2333, 77th Cong., 2d Sess., 52 (1942). Assuming all that is so, however, such congressional efforts still seem but a smaller part of a larger congressional objective: providing the Government with strong statutory "protection against stale demands." Cf. *United States* v. *Garbutt Oil Co.,* 302 U. S. 528, 533 (1938) (statute of limitations bars untimely amendment of claim for additional refund). Moreover, the history to which the taxpayers point reveals that § 6511's predecessor tax refund provisions, like § 6511, contained highly detailed language with clear time limits. See, *e. g.,* § 281(b) of the Revenue Act of 1924, ch. 234, 43 Stat. 301 (4-year limit on claims for overpayment of income, war-profits, or excess-profits tax and cap on refund amount); § 322(b) of the Revenue Act of 1932, ch. 209, 47 Stat. 242 (2-year limit for claim filing and corresponding limit on refund amount); Internal Revenue Code of 1954, 68A Stat. 808 (adopting current alternative time and amount limita-

tions); see also § 810 of the Revenue Act of 1932, ch. 209, 47 Stat. 283 (imposing time and amount limits for estate tax refunds). And that history lacks any instance (but for the present cases) of equitable tolling. On balance, these historical considerations help the Government's argument.

For these reasons, we conclude that Congress did not intend the "equitable tolling" doctrine to apply to § 6511's time limitations. The Ninth Circuit's decisions are

*Reversed.*