Justice Sotomayor,
concurring.
The Court holds that the presumption in favor of equitable tolling that we adopted in Irwin v. Department of Veterans Affairs, 498 U. S. 89, 95-96 (1990), does not apply to 42 U. S. C. § 1395oo(a)(3)’s nonjurisdictional 180-day deadline for health care providers to file administrative appeals with the Provider Reimbursement Review Board (PRRB), and that *162 the Secretary’s regulation limiting “good cause” extensions of that deadline to three years is a permissible interpretation of the statute. I agree with those holdings and join the Court’s opinion in full. I write separately to note that the Court’s decision in this case does not establish that equitable tolling principles are irrelevant to internal administrative deadlines in all, or even most, contexts.
The Court is correct that our equitable tolling cases have typically involved deadlines to bring suit in federal court. Ante, at 158. But we have never suggested that the presumption in favor of equitable tolling is generally inapplicable to administrative deadlines. Cf. Henderson v. Shinseki, 562 U. S. 428, 442, n. 4 (2011) (noting that the Government did not dispute whether the statutory filing deadline in the Article I Veterans Court was subject to equitable tolling if the deadline was nonjurisdictional); United States v. Brockamp, 519 U. S. 347, 350-353 (1997) (assuming without deciding that the Irwin presumption applied to administrative tax refund claims but finding based on statutory text, structure, and the underlying subject matter that tolling was unavailable); see also ante, at 159 (discussing Brockamp). And we have previously applied the Irwin presumption outside the context of filing deadlines in Article III courts. See Young v. United States, 535 U. S. 43, 49-53 (2002) (applying the presumption to a limitations period in bankruptcy proceedings); cf. Zipes v. Trans World Airlines, Inc., 455 U. S. 385, 392-398 (1982) (holding that the statutory time limit for filing charges with the Equal Employment Opportunity Commission was “not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling”).
In administrative settings other than the one presented here, I believe the “background principle” that limitations periods “are customarily subject to equitable tolling,” Young, 535 U. S., at 49-50 (internal quotation marks omitted), may limit an agency’s discretion to make filing deadlines abso *163 lute. The Court quite properly observes that the question whether equitable tolling is available turns on congressional intent. See ante, at 159. “[A] realistic assessment” of that intent, Irwin, 498 U. S., at 95, may vary by context.
In this case, given the nature of the statutory scheme, which “applies to ‘sophisticated’ institutional providers” who are “repeat players” in the Medicare system, and the statute’s history, I agree that it would distort congressional intent to presume that the PRRB’s administrative deadline should be subject to equitable tolling. Ante, at 159-160 (quoting Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U. S. 449, 456 (1999)). By contrast, with respect to remedial statutes designed to protect the rights of unsophisticated claimants, see ante, at 159-160, agencies (and reviewing courts) may best honor congressional intent by presuming that statutory deadlines for administrative appeals are subject to equitable tolling, just as courts presume comparable judicial deadlines under such statutes may be tolled. Because claimants must generally pursue administrative relief before seeking judicial review, see Woodford, v. Ngo, 548 U. S. 81, 88-91 (2006), a contrary approach could have odd practical consequences and would attribute a strange intent to Congress: to protect a claimant’s ability to seek judicial review of an agency’s decision by making equitable tolling available, while leaving to the agency’s discretion whether the same claimant may invoke equitable tolling in order to seek an administrative remedy in the first place.
Even in eases where the governing statute clearly delegates to an agency the discretion to adopt rules that limit the scope of equitable exceptions to administrative deadlines, I believe “cases may arise where the equities in favor of tolling the limitations period are ‘so great that deference to the agency’s judgment is inappropriate.’” Bowen v. City of New York, 476 U. S. 467, 480 (1986) (quoting Mathews v. Eldridge, 424 U. S. 319, 330 (1976)). In particular, efforts by an agency to enforce tight filing deadlines in cases where *164 there are credible allegations that filing delay was due to the agency’s own misfeasance may not survive deferential review. While equitable tolling extends to circumstances outside both parties’ control, the related doctrines of equitable estoppel and fraudulent concealment may bar a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim. See United States v. Beggerly, 524 U. S. 38, 49-50 (1998) (Stevens, J., concurring) (noting that these doctrines are distinct); see generally 2 C. Corman, Limitation of Actions §§9.1, 9.7 (1991) (describing the doctrines). In Bowen, we applied the basic principle underlying these doctrines to an agency’s conduct, as we concluded that a 60-day deadline to seek judicial review of the administrative denial of disability benefits should be tolled because the Social Security Administration’s “‘secretive conduct prevented] plaintiffs from knowing of a violation of rights.’” 476 U. S., at 481 (quoting New York v. Heckler, 742 F. 2d 729, 738 (CA2 1984)).
While the providers in this ease allege that the agency’s failure to disclose information about how it calculated the Supplemental Security Income fraction prevented them from bringing timely challenges to reimbursement determinations, I am satisfied that the Secretary’s 3-year good-cause exception is a reasonable accommodation of the competing interests in administrative efficiency and fairness. We would face a different case if the Secretary’s regulation did not recognize an exception for good cause or defined good cause so narrowly as to exclude cases of fraudulent concealment and equitable estoppel. See ante, at 150, n. 2 (explaining that the Secretary’s amended regulation limiting the scope of “ ‘good cause,’ ” 73 Fed. Reg. 30250 (2008) (codified in 42 CFR § 405.1836(b) (2012)), is not before us).
With these observations, I join the Court’s opinion in full.